# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 27, 2006          Decided June 9, 2006

No. 05-5017

LAURA GONZALEZ-VERA, ET AL.,
APPELLANTS

v.

HENRY ALFRED KISSINGER, IN HIS INDIVIDUAL CAPACITY AND
AS NATIONAL SECURITY ADVISOR AND SECRETARY OF STATE,
ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 02cv02240)

*Aaron Lloyd*, Student Counsel, argued the cause for appellants. With him on the brief was *Michael E. Tigar*. *Ali A. Beydoun*, *Christine Parsadaian*, *Courtney J. Nogar*, *Debra L. Spinelli-Hays*, *James B. Cowden*, *Karen Corrie*, *Laura Rotolo*, *Melissa Mandor*, and *Timothy L. Foden* entered appearances.

*William H. Goodman* and *Jennifer M. Green* were on the brief for *amicus curiae* Center for Constitutional Rights in support of appellants.

*Robert M. Loeb*, Attorney, U.S. Department of Justice, argued the cause for appellees.  With him on the brief were *Gregory G. Katsas*, Acting Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Barbara L. Herwig*, Assistant Director.

Before: GINSBURG, *Chief Judge*, and ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*:  The plaintiff-appellants sued the United States and former Secretary of State and National Security Advisor, Dr. Henry A. Kissinger, seeking damages for actions allegedly taken in support of the Pinochet regime in Chile 30-odd years ago.  The district court held the plaintiffs' claims justiciable but dismissed the suit on the grounds that the United States had not waived its sovereign immunity and the plaintiffs had failed to state a claim upon which relief can be granted against Dr. Kissinger.  We affirm the judgment of dismissal but do so on the ground that the plaintiffs' claims present a nonjusticiable political question.

## I.  Background

In September 1973 Chilean military officers staged a coup d'état, ousting the elected President, Salvador Allende, and installing Augusto Pinochet as chairman of the newly formed military junta.  The plaintiffs allege the Chilean Directorate of National Intelligence (DINA) thereafter "brutal[ly] repress[ed]" and attempted "to eliminate" individuals opposed to Pinochet's regime.  Complaint ¶ 60.  They further claim "the United States and/or Henry Kissinger funded, assisted, ... aided and abetted, ... acted jointly and conspired with known human rights violators"

in the "Chilean terror apparatus" to violate the human rights of the plaintiffs and their relatives. *Id.* ¶ 2. In particular, the plaintiffs allege Kissinger "purposefully act[ed] outside the proper channels of Congressional oversight of covert operations" to assist and establish contacts with known terrorists and "authorized" the CIA to assist the military regime. *Id.* ¶¶ 43, 65, 69.

After the release of a report from the United States Department of State suggesting Kissinger was aware of human rights violations committed by the DINA, *see* Hinchey Report on CIA Activities in Chile (Sept. 18, 2001), *available at* http://foia.state.gov/Reports/HincheyReport.asp, the plaintiffs brought suit against the United States and Kissinger under the Alien Tort Statute (ATS), 28 U.S.C. § 1350; the Torture Victim Protection Act (TVPA), *id.* § 1350 note; the common law; and customary international law. Compl. ¶ 10. They sought relief for, among other things, torture, false imprisonment, wrongful death, and intentional infliction of emotional distress. *Id.* ¶¶ 115, 152, 163, 175-76.

The United States moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction because it raised a political question and, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The plaintiffs argued the case was justiciable and they had stated "cognizable claims" against both the United States and Kissinger. The district court, terming it a "close" call whether the claims were justiciable, ultimately held the political question doctrine was inapplicable. Ruling on the merits, the court held (1) the claims against the United States were barred by sovereign immunity and, (2) because Kissinger had acted within the scope of his employment, the Westfall Act barred all but possibly the TVPA claim against him, *see* 28

U.S.C. § 2679(b)(1). Assuming *arguendo* that the Westfall Act did not bar the TVPA claim against Kissinger, *see id.* § 2679(b)(2)(B) (allowing suit "for a violation of a statute of the United States under which such action against an individual is otherwise authorized"), the district court held the plaintiffs had failed to state a claim under that Act because they did not allege Kissinger had acted under color of foreign law. *See id.* § 1350 note.

## II. Analysis

The plaintiffs ask us to reverse the judgment of the district court on the grounds that (1) sovereign immunity does not bar their claims against the United States; (2) they were entitled to discovery in order to demonstrate Kissinger was not acting within the scope of his employment; (3) the Westfall Act does not bar their claim under the ATS; and (4) they have stated a claim under the TVPA. The Government first argues the case is nonjusticiable under the political question doctrine and, in the alternative, defends the judgment of the district court on the merits.

## A. Order of Decision

At the outset, the plaintiffs "question whether [the United States is] procedurally barred from raising th[e] issue" of justiciability because it did not cross-appeal the district court's refusal to apply the political question doctrine. Because "Rule 12(b)(6) is a threshold procedural requirement that cannot include a determination of the merits of a claim," the plaintiffs maintain the Government has "improperly" asked this court "to consider justiciability prior to analyzing the District Court's dismissal."

5

The plaintiffs mistake the nature of our inquiry. A dismissal based upon the political question doctrine is not an adjudication on the merits. *Hwang Geum Joo v. Japan*, 413 F.3d 45, 47 (D.C. Cir. 2005). Rather, the doctrine is a "jurisdictional limitation[] imposed upon federal courts by the 'case or controversy' requirement of Art[icle] III"; hence "the presence of a political question ... prevent[s] the power of the federal judiciary from being invoked by the complaining party." *Schlesigner v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974); *accord Bancoult v. McNamara*, 445 F.3d 427, 432 (D.C. Cir. 2006). It follows that regardless whether the Government has raised the issue -- in a timely or an untimely manner or not at all -- we must consider whether the plaintiffs' claims present a political question lest the court invade the province of the political branches. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

B. Application of the Political Question Doctrine

The United States argues our decision in *Schneider v. Kissinger*, 412 F.3d 190 (2005), controls this case, rendering all the plaintiffs' claims nonjusticiable. Specifically, the Government argues the claims are nonjusticiable because they would require the court to pass judgment on a matter of foreign policy and national security, which subjects are "textually committed to the political branches," *id.* at 194. Alternatively, the Government argues "there are no judicially discoverable and manageable standards to apply to the claims here," thus precluding any role for the judiciary. The Government also contends our recent decision in *Bancoult v. McNamara* "fully supports application of the political question doctrine" in this case.

The plaintiffs distinguish *Schneider* as having presented a

challenge to the Government's "policy decision to support Pinochet's rise to power," whereas the present case challenges specific "acts of torture ... committed after the military government was already in place." Because these acts "could not have been committed in furtherance of any policy decision to support Pinochet's rise to power," they reason, their claims raise no political question. The plaintiffs also cite *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729 (2004), for the proposition that "claims based on a narrow class of international norms, such as ... claims of torture and extrajudicial killing, should be protected [sic] and adjudicated in U.S. courts."

The Supreme Court has recognized a half dozen reasons for which a case may be nonjusticiable under the political question doctrine:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. 186, 217 (1962). As mentioned above, the United States here argues the first and second reasons; if either obtains, the courts are without jurisdiction to proceed. *See*

*Schneider*, 412 F.3d at 194.

Despite the plaintiffs' efforts, we fail to see how this case can be distinguished from *Schneider*. In each instance the plaintiffs brought claims under the common law, international law, the ATS, and the TVPA. The plaintiffs in *Schneider* alleged the United States and Kissinger, in conjunction with certain Chilean officials, facilitated kidnapping and torture in order to further the goals of "[k]ey United States policymakers" who had opposed the election of President Allende. *Id.* at 191-92. We held the plaintiffs' claims nonjusticiable per the political question doctrine because they challenged "foreign policy decisions of the United States .... within the province of the political branches." *Id.* at 195. More specifically, the complaint presented questions "textually committed to a coordinate branch of government," running afoul of the first reason stated in *Baker v. Carr*. *Id*. at 194.

The same is true here. The plaintiffs have alleged and challenged drastic measures taken by the United States and Kissinger in order to implement United States policy with respect to Chile. For the court to evaluate the legal validity of those measures would require us to delve into questions of policy "textually committed to a coordinate branch of government." *Id.* It is of no moment that the acts alleged in this case took place after the coup. True, as the plaintiffs state, those acts "could not have been committed in furtherance of any policy decision to support Pinochet's rise to power," but the difference between actions taken to place Pinochet in power and actions taken to keep him in power does not a viable distinction make: Both types of actions, if they occurred, were "inextricably intertwined with the underlying" foreign policy decisions constitutionally committed to the political branches. *Bancoult*, 445 F.3d at 436. Nor are we persuaded by the plaintiffs' purported distinction

between challenging an "action" and challenging a "policy." As we explained in *Bancoult*, the dichotomy is false; actions taken in furtherance of foreign relations themselves may "constitute[] foreign policy decisions." *Id.* at 437.

Such is indeed the case here. Although the plaintiffs attempt to characterize Kissinger's acts as *ultra vires*, Compl. ¶ 2, we reiterate what we said in *Schneider*: Whatever Kissinger did as National Security Advisor or Secretary of State "can hardly be called anything other than foreign policy." 412 F.3d at 199.

To be sure, we can imagine a case in which a rogue agent commits an act so removed from his official duties that it cannot fairly be said to represent the policy of the United States, but this is not such a case. The plaintiffs allege Kissinger "purposefully act[ed] outside the proper channels of Congressional oversight," Compl. ¶ 43, but that does not take his conduct outside the scope of his employment; the statutory descriptions of Kissinger's positions make clear his duty was to the President, not to the Congress. *See* 22 U.S.C. § 2656 (Secretary of State responsible for "conduct[ing] the business of the department in such manner as the President shall direct"); 50 U.S.C. § 402(a)-(b) (function of National Security Council, of which National Security Advisor is a member, "to advise the President with respect to the integration of ... policies relating to the national security" and to perform "such other functions as the President may direct").

We need not quarrel with the plaintiffs' assertion that certain claims for torture may be adjudicated in the federal courts as provided in the TVPA, *see* 28 U.S.C. § 1350 note. We simply observe that such a claim, like any other, may not be heard if it presents a political question. So it was that, before concluding the present case is entirely nonjusticiable under the political

question doctrine, we requested supplemental briefing on the justiciability of the plaintiffs' claims under the TVPA.  *See Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986) (although "courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature .... it goes without saying that interpreting congressional legislation is a recurring and accepted task for the federal courts" (internal quotation marks omitted)).  As we have seen, however, the plaintiffs were unable to extricate their TVPA claims from the political question that permeates their complaint. The plaintiffs having failed to present any cognizable factual distinction of, or persuasive legal argument for departing from, our decision in *Schneider*, that precedent must control this case.

## III.  Conclusion

In *Schneider* we held nonjusticiable various claims against the United States and Dr. Kissinger for measures allegedly taken in the 1970s to implement the United States' foreign policy with respect to Chile.  We do so again today.  Because the plaintiffs' claims call into question foreign policy decisions textually committed to the political branches, they must be and hereby are

*Dismissed.*